## WAYNE T. BELL *v.* ZONING BOARD OF APPEALS OF THE TOWN OF NEWINGTON ET AL.
### (10442)

DUPONT, C. J., LANDAU and FREEDMAN, Js.

Argued January 9—decision released March 10, 1992

*Thomas P. Byrne,* for the appellant (plaintiff).

*Frank R. Borowy,* with whom, on the brief, was *David L. Griffith,* for the appellee (named defendant).

*Vincent F. Sabatini,* for the appellees (defendant Elsie Yawin et al.).

LANDAU, J. The plaintiff, Wayne T. Bell, the Newington zoning enforcement officer, appeals from the judg-

ment of the trial court affirming the decision of the defendant Newington zoning board of appeals reversing his denial of the application of the defendant Elsie Yawin and her son, Robert Yawin, for a building permit to erect a single-family residential dwelling. The plaintiff claims that the trial court improperly failed to find that § 5.1.1.B of the zoning regulations of the town of Newington provides for an automatic merger of nonconforming lots. We agree with the trial court.

The following facts are pertinent to our resolution of this appeal. In 1924, prior to the adoption of the zoning regulations in the town of Newington, the area in which the land in question is located was subdivided into approximately 225 lots, the majority of which had fifty feet of frontage. The defendants Elsie Yawin and Robert Yawin are owners of three contiguous lots in that subdivision (lots 115, 116, and 117), each with a fifty foot frontage, collectively known as 225 Marlborough Street. Elsie Yawin purchased lot 116 on December 9, 1931, lot 117 on April 6, 1949, and lot 115 on April 12, 1949.[1] The three lots have been treated as one parcel of land by the tax collector. In 1952, a single-family residence was built on lots 116 and 117. Lot 115 remained vacant. In April, 1986, Elsie Yawin conveyed her interest in these three lots by quitclaim deed to her son Robert. On the same day, Robert conveyed a life estate in the property by quitclaim deed to Elsie Yawin.[2] In each conveyance, the lots were referred to by their original numbers. The assessor's card indicated that the property consisted of lots 115–117 and that lot 115 could be sold separately.

When the zoning regulations were adopted,[3] the three lots became nonconforming for building purposes. They

[1] All purchases were properly recorded in the Newington land records.

[2] Those interests were also properly recorded in the Newington land records.

[3] The record contains nothing indicating the date the zoning regulations were adopted.

are all located in an R-12 zone, which requires that lots have an area of 12,000 square feet and a frontage of 80 feet in order to be used for residential purposes. Lot 115 has an area of 5500 feet and a frontage of 50 feet. Lots 116 and 117, on which the residential dwelling is located, have a total area of 11,000 square feet and a frontage of 100 feet. On September 20, 1989, the town of Newington adopted an amendment to its zoning regulations.[4] At some time after the effective date of the amendment, Elsie Yawin and Robert Yawin applied to the zoning enforcement officer for a zoning permit to construct a single-family dwelling on lot 115. The zoning enforcement officer denied their application on the ground that lot 115 did not conform to the lot area and width requirements of the zoning regulations. The Yawins appealed the decision to the Newington zoning board of appeals. After a hearing, the board reversed the decision of the zoning enforcement officer. It found that there was no adjacent land that may be or could have been added to lot 115 to make it conforming. The board further found that the three lots had not merged.

---

[4] The new regulation as amended provides:

"5.1.1 Non-Conforming Lot of Record

A dwelling unit or a non-residential building may be erected on a lot of less width or area or both than required provided that:

A. The lot is clearly shown or [described] as a separate and distinct building lot on a map or in a deed or other instrument duly recorded in the Town Clerk's Office. A certified copy of such map, deed or other instrument shall be filed with the application for the building permit.

B. No owner of such lot or lots at any time since it became non-conforming shall have owned adjacent land which may be or could have been included as a part of the lot in question. Said lot was created or established as a separate building lot prior to the adoption of Zoning in the Town of Newington, or at the time of its creation or establishment as a separate building lot, complied with all lot [width] and area requirements then in effect.

C. The lot fronts on an accepted street, a proposed street in an approved subdivision for which surety has been posted in accordance with 7.3., or on a private street constructed in accordance with the minimum standards of the Town of Newington, unless specifically permitted subject to the appropriate standard as set forth in these regulations.

D. All other requirements are met."

The plaintiff appealed the board's decision to the Superior Court. He argued that the board had incorrectly interpreted § 5.1.1 and that the amendment permitted an owner to build on a nonconforming lot only if the owner owns no adjacent land. The crux of the plaintiff's argument was that, because the Yawins own adjacent land, they are required to add that land to lot 115 in an attempt to conform lot 115 to the zoning regulations. The defendants argued that, because there is a house on lots 116 and 117, there is no land available to add to lot 115 to make it conform to the zoning regulations and that taking land from lots 116 and 117 and adding it to lot 115 would render the donor lots more nonconforming, contrary to the intent of the newly amended § 5.1.1.[5]

The trial court made the following factual findings: (1) lot 115 is a separate and distinct building lot on a deed and certified map, (2) no land could have been used to make this a conforming lot, (3) lot 115 was established as a separate lot in 1924 and complied with all then existing zoning requirements, and, therefore, the lots never merged. The court concluded that the board did not act in an unreasonable, arbitrary and illegal fashion in determining that there was no merger of the land and that the Yawins owned no land that could have been added to lot 115. The court dismissed the plaintiff's appeal and granted the Yawins permission to build on lot 115.

---

[5] The second introductory paragraph of the amendment to § 5.1.1 provides: "It is the intent of this regulation to permit these non-conformities to continue until they are removed, but not to encourage their survival. Such uses are declared by this regulation to be incompatible with permitted uses in the zones involved. It is further the intent of this regulation that non-conformities shall not be enlarged upon, extended or expanded if such a change increases the non-conformity, or be used as grounds for adding other structures or uses prohibited elsewhere in the same district."

The third introductory paragraph concludes as follows: "'[N]othing in this regulation shall be deemed to require a change in the plans, construction or designated use of any structure on which actual construction was lawfully begun prior to the effective date of this . . . regulation."

The plaintiff claims that the trial court improperly found that lots 115, 116 and 117 had not merged by operation of law because there was no adjacent property that could have been added to lot 115 to make it conform with the zoning regulations. We disagree.

"Zoning boards of appeal are entrusted with the function of deciding, within prescribed limits and consistent with the exercise of legal discretion, whether a regulation applies to a given situation, and the manner of its application. *Connecticut Sand & Stone Corporation* v. *Zoning Board of Appeals,* 150 Conn. 439, 442, 190 A.2d 594 (1963). In discharging this responsibility, a board is endowed with a liberal discretion, and its action is subject to review by the courts only to determine whether it was unreasonable, arbitrary or illegal. Id." *Molic* v. *Zoning Board of Appeals,* 18 Conn. App. 159, 165, 556 A.2d 1049 (1989). " 'Courts are not to substitute their judgment for that of the board . . . and decisions of local boards will not be disturbed so long as honest judgment has been reasonably and fairly exercised after a full hearing.' (Citations omitted.)" *Iannucci* v. *Zoning Board of Appeals,* 25 Conn. App. 85, 88–89, 592 A.2d 970 (1991). When a zoning board of appeals has stated the reasons for its action, a reviewing court may determine only whether the reasons given are supported by the record and are pertinent to the decision. *Torsiello* v. *Zoning Board of Appeals,* 3 Conn. App. 47, 50, 484 A.2d 483 (1984).

The board stated that its reason for reversing the plaintiff's decision was that there had been no merger of the subject properties because there was insufficient land to add to lot 115 to make it conform with the existing zoning regulations. Thus, the trial court was restricted to a determination of whether the board's finding that there was no available adjacent land that could have been added to the lot and, therefore, that there had been no merger, was reasonably supported

by the record and whether that finding was a pertinent basis on which to grant the defendant's application. *Horn* v. *Zoning Board of Appeals,* 18 Conn. App. 674, 677, 559 A.2d 1174 (1989).

Contiguous land owned by the same person does not necessarily constitute a single lot. *Schultz* v. *Zoning Board of Appeals,* 144 Conn. 332, 338, 130 A.2d 789 (1957); *Marino* v. *Zoning Board of Appeals,* 22 Conn. App. 606, 609, 578 A.2d 165, cert. denied, 216 Conn. 817, 580 A.2d 58 (1990). A merger can occur by operation of law.[6] The one occasion this court has found where merger may occur by operation of law is that found in some zoning regulations that may require, either expressly or implicitly,[7] that under certain conditions a nonconforming lot merges with contiguous

---

[6] A merger can also occur if the owner of contiguous parcels of land intends to form one tract. The owner's intent "may be inferred from his conduct with respect to the land and the use which he makes of it." *Molic* v. *Zoning Board of Appeals,* 18 Conn. App. 159, 169, 556 A.2d 1049 (1989). Intent is an inference of fact and is not reviewable unless it was one that the trier could not reasonably make. See *Hoagland* v. *Zoning Board of Appeals,* 1 Conn. App. 285, 290, 471 A.2d 665 (1984).

The evidence presented at the public hearing was that the property owners never intended to merge the three lots. In the original subdivision plan the lots appear separately. Each of the three lots was purchased separately, through three separate deeds, and each was recorded separately. No portion of the house on lots 116 and 117 was constructed on lot 115. In the conveyances from Elsie Yawin to Robert and from Robert back to Elsie, the lots were referred to by their original numbers and the assessor's card indicated that the property was composed of lots 115–117 and that lot 115 could be sold separately. Moreover, even though the lots were treated as one piece of property for tax purposes, the *Molic* court recognized that no authority exists for the proposition that an owner must be deemed to have merged contiguous lots simply because the town taxes his land as one tract. *Molic* v. *Zoning Board of Appeals,* supra.

[7] In *Newman* v. *Zoning Board of Appeal,* 14 Conn. App. 55, 60, 539 A.2d 614, cert. denied, 208 Conn. 806, 545 A.2d 1103 (1988), this court recognized that although some zoning regulations refer specifically to the merger doctrine, use of the talismanic word "merger" is not necessary; that in order for a merger to occur, a zoning regulation need not specifically state that under its provisions a merger of two parcels takes place. A merger can, therefore, occur by implication as well as by express authority.

land owned by the same owner. See *Neuman* v. *Zoning Board of Appeals,* 14 Conn. App. 55, 60, 539 A.2d 614, cert. denied, 208 Conn. 806, 545 A.2d 1103 (1988); *Torsiello* v. *Zoning Board of Appeals,* supra, 48 n.2; but see *Schultz* v. *Zoning Board of Appeals,* supra. Whether the zoning ordinance requires that two commonly owned and adjacent lots be merged does not depend on the presence or absence of a merger clause. Whether such a requirement exists can best be ascertained from an examination of the ordinance itself. *Neuman* v. *Zoning Board of Appeals,* supra.

In order to prevent a merger by operation of law, all of the conditions of § 5.1.1 must be met. Specifically, there must be (1) a lot clearly shown or described as a separate and distinct building lot on a map or deed filed in the town clerk's office, (2) a certified copy of the map must be filed with the application for a building permit, (3) no owner of the lot at any time since it became nonconforming shall have owned adjacent property that may or could have been included as part of the lot in question, (4) the lot must have been created or established as a separate building lot before the adoption of the zoning regulations, or must, at the time of its creation, have complied with the then existing zoning regulations, and (5) the lot fronts on an accepted street. The only requirement the zoning enforcement officer challenges is the third, whether there exists adjacent property which may or could have been included as part of the lot in question, lot 115. On the record, we cannot say that the trial court acted unreasonably, arbitrarily or illegally in concluding that there was no merger because there was no adjacent property that could have been added to lot 115.

As applied to this case, § 5.1.1 requires neither an express nor an implied merger by operation of law. Section 5.1.1.B provides that "[n]o owner of such lot or lots at any time since it became non-conforming shall

have owned *adjacent land which may be or could have been included as part of the lot in question.* Said lot was created or established as a separate building lot prior to the adoption of Zoning in the Town of Newington or, at the time of its creation or establishment as a separate building lot, complied with all lot [width] and area requirements then in effect." (Emphasis added.) The italicized language, as applied in the present case, precludes a finding of merger by operation of law. This portion of the amendment indicates that only if there is land that "may be" or "could have been" included as part of the lot in question will such land merge by operation of law. Here, the zoning board of appeals and the trial court found that no such land existed. Where the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision. See *McClintock* v. *Rivard,* 219 Conn. 417, 426–27, 593 A.2d 1375 (1991); *Red Hill Coalition, Inc.* v. *Conservation Commission,* 212 Conn. 710, 723, 563 A.2d 1339 (1989); *Koepke* v. *Zoning Board of Appeals,* 25 Conn. App. 611, 616, 595 A.2d 935, cert. denied, 220 Conn. 932, 599 A.2d 382 (1991). We conclude that the trial court's conclusions are legally and logically correct.

Adding property to lot 115 from lots 116 and 117, as the plaintiff suggested, could not result in making lot 115 conform to the present zoning requirements without reducing the combined area of lots 116 and 117, already below the minimum requirement,[8] and rendering them more nonconforming. In addition, the most that can be taken from lots 116 and 117 without making them nonconforming as to road frontage would be twenty feet, which is still not enough to make lot 115

---

[8] By building a house on lots 116 and 117 the property owners exhibited sufficient evidence to support an inference that it was their intent that these two lots merge.

conforming in that regard.[9] Because the intent of the amendment was to prevent the creation of nonconforming lots whenever possible, the board and the trial court correctly concluded that the adjacent land was not land that "may be" or "could have been" included in the property in question, and, therefore, that there was no merger by operation of law.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[9] The frontage on lot 115 would become seventy feet and the total area would become 7700 square feet.

